UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JULIOUS KING,

    Petitioner,

v.                                        Case No. 06-C-0601

TIMOTHY LUNDQUIST, Warden,

    Respondent.

**DECISION AND ORDER ON HABEAS CORPUS PETITION**

**I. PROCEDURAL BACKGROUND**

On May 18, 2006, the petitioner, Julious King ("King"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. According to his petition and the attachments thereto, King was convicted on February 26, 2002, in the Milwaukee County Circuit Court of felony murder (party to a crime) and armed robbery (party to a crime) in violation of Wis. Stat. §§ 940.03 and 939.05. He was sentenced to serve fifty (50) years' imprisonment, comprised of thirty years of initial confinement and twenty years of extended supervision, to run consecutively to any other sentence. King's state appellate counsel filed with the Wisconsin Court of Appeals a no merit report pursuant to Wis. Stat. Rule 809.32 and *Anders v. California*, 386 U.S. 738 (1967). On February 22, 2005, the Wisconsin Court of Appeals affirmed King's judgment of conviction, finding there were "no arguably meritorious appellate issues." (Answer, Ex. E at 2.) On May 11, 2005, the Wisconsin Supreme Court denied King's petition for review. (Answer, Ex. G.) King did not petition the United States Supreme Court for a writ of certiorari.

King's petition for a writ of habeas corpus asserts two grounds for relief: (1) that his guilty plea was not knowingly and voluntarily entered because during the plea colloquy King

was asked by the judge whether he was pleading guilty and King responded that he "did not kill [the victim]," and (2) that his trial counsel was ineffective because he did not sufficiently explain the consequences of the plea agreement to King prior to his entering a plea of guilty. (Pet. at 5.)

However, King's brief in support of his petition raises four claims. King realleges the two claims set forth in his petition, and in addition, he argues that the State failed to prove King's status as a repeat offender and that the trial court erred in sentencing King to felony murder. (Pet'r's Br. 1.) On September 28, 2006, King moved this court for leave to amend his original petition to include the two additional claims that are addressed in his brief. On November 9, 2006, the court denied King's motion to amend, finding that his additional claims did not "relate back" to his original petition and that therefore the additional claims were barred by the one-year statute of limitations period set forth in 28 U.S.C. § 2244(d)(1).

Previously, on May 19, 2006 (prior to the court's November 9, 2006 order), the court ordered the respondent to file an answer to the petition and set a briefing schedule to govern the processing of King's petition. The parties submitted their briefs in accordance therewith. Thus, King's habeas corpus petition is now fully briefed and is ready for resolution.

## II. FACTUAL BACKGROUND

The following is a summary of the facts underlying King's conviction as set forth by the Wisconsin Court of Appeals.

King and Dennis Hentz, brandishing guns, robbed a liquor store owned by Carlos Ramos. Near the end of the robbery, Ramos struggled with Hentz. Ramos was shot and died of his wounds.

On December 13, 2001, defendant King pled guilty to felony murder (party to a crime) and armed robbery (party to crime) for his participation in the liquor store robbery and Ramos' death. At the outset of the plea hearing, the State recited the terms of the plea negotiations –

2

King would plead guilty to felony murder, armed robbery, party to a crime, and the State would move to dismiss a habitual criminality enhancer to that charge and would move to dismiss an additional charge of possession of a firearm by a felon. The State agreed to recommend a term of initial confinement ranging from twenty-five (25) to thirty (30) years and the State would be free to argue about the length and terms of extended supervision. The assistant district attorney premised the negotiations upon King's cooperation with the State in the prosecution of Hentz, including King's agreement to testify truthfully if subpoenaed at trial. At the conclusion of the assistant district attorney's summary, King agreed that the negotiations had been described accurately.

The court explained to King the maximum sentence for the crime, and King indicated that he understood. The court also explained that it was not bound by the parties' sentencing recommendations or plea negotiations and that it could impose the maximum sentence if deemed appropriate. King told the court that he understood.

A signed plea questionnaire is in the record. King informed the court that he had reviewed the questionnaire with counsel and that he understood the information on it. The court explained that a guilty plea would waive the constitutional rights enumerated on the questionnaire, and the court reviewed those rights. King told the court that he understood that this guilty plea would waive the constitutional rights. King told the court that he had reviewed the criminal complaint and understood the factual allegations of the complaint. King informed the court that those allegations were substantially true and correct. King agreed that the court could rely on the criminal complaint for the factual basis for the plea, and the court concluded that an adequate basis for the plea existed.

During the colloquy, the court inquired whether King was pleading guilty because he was guilty. King replied, "I didn't kill him." After King's statement, his attorney volunteered,

"perhaps this would help qualify Mr. King's plea. He was not the shooter in this case, Your Honor. However, he admits to participating in the armed robbery where Mr. Ramos was shot by Mr. Hentz." King expressly agreed with counsel's statement. With that statement on the record, King told the court that he was pleading guilty to felony murder, as party to a crime, where the underlying offense is armed robbery, as party to a crime, because he was guilty. (Answer, Ex. E. at 2-4).

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corr.*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.").

The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000);

*see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner exhausts his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *id.*, 501 U.S.

at 729-30, or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state, *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

## IV. DISCUSSION

As previously stated, King's petition asserts two grounds for relief: (1) King's guilty plea was not knowingly and voluntarily entered and (2) King's trial counsel was ineffective. This court will address each claim in turn.

*A. Voluntariness and Knowledge of Guilty Plea*

King first alleges that his guilty plea was not made knowingly and voluntarily. Specifically, King asserts that during the plea colloquy, the judge (1) did not appropriately

6

inquire into the extent of King's education and general comprehension, (2) did not advise King of the elements of the charge to which he was pleading, and (3) inappropriately made inquiries to, and accepted statements from, King's counsel as opposed to King directly. When addressing this same question, the Wisconsin Court of Appeals determined that King's claim had no merit. When addressing the issues presented by the petitioner, this court is limited to deciding whether the Wisconsin Court of Appeals' adjudication of such claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

"[T]he Constitution insists, among other things, that the defendant enter a guilty plea that is voluntary and that the defendant must make related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz,* 536 U.S. 622, 629 (2002) (internal quotations omitted). In *Boykin v. Alabama*, 395 U.S. 238 (1969) and *Brady v. United States*, 397 U.S. 742 (1970), the Supreme Court expounds upon this legal maxim.

In *Boykin*, the Supreme Court held that a defendant must affirmatively state on the record that his plea is made intelligently and voluntarily. 395 U.S. at 242. Such an affirmative showing on the record is necessary because "a plea of guilty is more than an admission of conduct; it is a conviction." *Id.* In pleading guilty, a defendant waives several important constitutional rights, and a reviewing court cannot presume a defendant knowingly and intelligently waived his federal rights from a silent record. *Id.* at 243.

In *Brady,* the Supreme Court stated that a court can determine the voluntariness of a plea by considering the circumstances surrounding the plea. 397 U.S. at 749. Furthermore, the Court analyzed the question of whether the State coerces a defendant to plead guilty by making it more advantageous for the defendant to do so.

> The State to some degree encourages pleas of guilty at every important step in the criminal process. For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family. All of these pleas of guilty are valid in spite of the State's responsibility for some of the factors motivating the pleas; the pleas are no more improperly compelled than is the decision by a defendant at the close of the State's evidence at trial that he must take the stand or face certain conviction.

397 U.S. at 750. In the end, the Court stated that "[t]he standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit: '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes).'" *Id*. at 755 (citation omitted).

In finding that an appeal raising the issue of whether King's guilty plea was knowingly and voluntarily entered would be non-meritorious (i.e., frivolous), the Wisconsin Court of Appeals cited neither *Boykin* nor *Brady*. Rather, the state court cited *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), in support of such finding. However, *Bangert* was based in part on Supreme Court jurisprudence, including *Boykin* and *Brady*. *See* 131 Wis. 2d at 255-57, 389 N.W.2d at 18. Such being the case, the court of appeals identified the correct constitutional standard to apply when it assessed the voluntariness of King's guilty plea. Stated another way, the court of appeals correctly identified the Supreme Court precedent or "clearly established federal law" that was to direct its deliberation regarding whether King's plea was knowing and voluntary.

Thus, this court must now determine whether the court of appeal's application of this "clearly established federal law" was "objectively unreasonable." *Wiggen,* U.S. at 520-21. In my opinion, the court of appeals' decision that King's guilty plea was in fact knowing and voluntary was not an unreasonable application of relevant federal law.

As to King's first contention – that the trial court did not adequately determine the extent of his education and general comprehension – I find that the court of appeals correctly determined that King's argument had no merit. Even if the constitution requires the trial court to determine the extent of a defendant's education, the trial court in this case certainly fulfilled that duty. Not only did the court have in its possession a plea questionnaire signed by King indicating he had completed ten (10) years of schooling and had received his GED, (Answer, Ex. H at 1), the court received verbal assurance from King during the colloquy that this information was accurate (Answer, Ex. L at 6).

Further, the court adequately established that King generally comprehended the proceedings and the consequences of his plea. King informed the court that he had signed the plea questionnaire, "went over it" with his attorney, and understood everything on the form. To be sure, King alleges now that he did not comprehend the agreement and that his statement "I didn't kill him" should have indicated to the trial court that his general comprehension was constitutionally inadequate. However, such a retrospective appeal must fail upon a review of the transcript of the plea proceeding. Following King's statement, "I didn't kill him," the following exchange took place among the court, King's counsel, and King:

> THE COURT: And, Mr. King, are you pleading guilty because you are guilty?
>
> THE DEFENDANT: I didn't kill him.
>
> THE COURT: That's not my question, but at this point if you wish to speak with your attorney, you can do so.

9

> MS. DEVITT: And perhaps this would help qualify Mr. King's plea. He was not the shooter in this case, Your Honor. However, he admits to participating in the armed robbery where Mr. Ramos was shot by Mr. Hentz. Is that correct, Mr. King? Just say yes or no.
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Then the question is are you entering this plea of guilty of felony murder, as a party to a crime, the underlying offense is armed robbery as a party to a crime – are you pleading guilty because you are guilty?
>
> THE DEFENDANT: Yes.

(Answer, Ex. L at 9.) The court of appeals did not incorrectly apply Supreme Court precedent in holding that the entirety of this exchange indicated that King understood the nature of the charge to which he was pleading guilty.

King is correct in asserting that, as noted above, a defendant must have an understanding of the charges against him. However, King is incorrect in asserting that the record indicates he did not have full understanding of the charges against him. As discussed above, King signed a plea questionnaire which stated, in part, as follows: "I understand that the crime(s) to which I am pleading has/have elements that the State would have to prove beyond a reasonable doubt if I had a trial. These elements have been explained to me by my attorney[.]" Here, the court did discuss the charges with King, who stated affirmatively that he was pleading guilty because he was guilty. King's statement "I didn't kill him" is not enough, taking into account the totality of the colloquy, to overcome the voluntariness of King's plea as demonstrated by his affirmative statements and signed plea questionnaire.

Because the record indicates that King understood the nature of the crime and that the court did indeed inquire into his level of general comprehension and level of education, King's claim that his plea was not knowing and voluntary must be rejected. Even more to the point, given the foregoing, this court cannot say that the Wisconsin Court of Appeals' rejection of such

claim was "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1).

*B. Ineffective Assistance of Counsel*

In his brief, the respondent raises a threshold issue regarding King's ineffective assistance of counsel claim. The respondent argues that King did not properly present this claim to the Wisconsin Supreme Court and therefore has procedurally defaulted the same. Furthermore, the respondent argues that the petitioner has not shown (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50.

In King's petition for review to the Wisconsin Supreme Court, King stated, at the conclusion of the petition, that the state supreme court "should grant review on [K]ing['s] alterivative [sic] claim of ineffective assistance of counsel because it is a real and significant question of constitutional law." I will assume for purposes of this decision that this statement was sufficient to indicate to the Wisconsin Supreme Court that King was claiming ineffective assistance of counsel on federal constitutional grounds. Thus, the merits of King's ineffective assistance of counsel claim will be addressed.

Defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. *Id.* at 688, 694. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily satisfied. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered strong trial strategy." *Id.* at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

Furthermore, a habeas court need not address the two prongs of *Strickland* in any particular order or even address both if the defendant makes an inadequate showing as to one. In this latter regard the Supreme Court in *Strickland* clearly stated:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies….If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

In *Hill v. Lockhart,* 474 U.S. 52 (1985), the Supreme Court held that the *Strickland* ineffective assistance of counsel test applies to guilty plea challenges. Where a defendant's challenge to his plea is based on the alleged ineffective assistance of counsel, the defendant must show (1) that the counsel's representation fell below an objective standard of reasonableness, which is determined by the range of competence demanded of attorneys in criminal cases; and (2) that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and *would have instead insisted* on going to trial." *Id.* at 56-59 (emphasis added); *St. Pierre v. Walls,* 296 F.3d 617, 628 (7th Cir. 2002). Additionally, whether the defendant

would have gone to trial but for counsel's errors "will depend largely on whether the [] defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59.

In his habeas petition and supporting brief, King argues that his counsel did not explain to him the full consequences of the plea bargain. However, even assuming that were the case, the facts upon which King bases his ineffective assistance of counsel claim fail to demonstrate that, if the facts were otherwise, King would have insisted on going to trial.

More precisely, in support of his claim, King points to a statement that the prosecutor made at the change of plea hearing on December 13, 2001 – "I will file the letter [setting forth the conditions of the plea agreement], which has other provisions which I don't really think are really germane to the plea agreement." (Answer, Ex. L at 4.) King asserts that his attorney "should have requested that the state outline the other provisions to the court at that time, so it may see if those provisions have concerns as to King's plea." (Pet'r's Br., Argument 4.) The letter to which the prosecutor was referring was dated November 2, 2001, and had been sent to defense counsel, Anne Devitt. (Answer, Ex. L at 2.) A comparison of what was stated at the change-of-plea hearing and the contents of the letter reveals that there was only one paragraph relating to the plea agreement that was not read aloud. That paragraph reads as follows:

> Mr. King also should be made aware of the fact that the consideration proposed under this agreement is not dependent [sic] on Mr. Hentz's conviction at trial: that is, in order to secure the benefits under this agreement, Mr. King must fully cooperate and testify truthfully, if called to do so; he will be given the benefit under this agreement whether or not his truthful testimony results in the conviction of his co-defendant. Further, if he accepts this offer and enters a guilty plea under the provision of this agreement, Mr. King will be given the consideration listed here, even if Mr. Hentz pleads guilty before (or during) trial.

Neither in his petition nor in his brief does King assert that, if he had known of this paragraph, he would not have plead guilty and would instead have insisted on going to trial. Furthermore, King sets forth no special circumstances that support a conclusion that he placed

13

any particular emphasis on testifying or not testifying at Mr. Hentz's trial when making his decision to plead guilty. Because King has not demonstrated that he would have insisted on going to trial if he had been aware of this particular paragraph in the letter, King cannot successfully maintain a claim of ineffective assistance of counsel. *See Hill,* 474 U.S. at 60.

C. *Other claims*

King presents in his brief other claims in support of this petition. However, those claims were not in his original petition and this court has already denied King's motion to amend the petition to add those claims. Consequently, the court will not address them.

In conclusion, and for all of the foregoing reasons, King's petition for a writ of habeas corpus will be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 17th day of December 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge